IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM E. MOORE,

                Plaintiff,

     v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

OPINION AND ORDER

17-cv-21-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff William E. Moore is seeking review of a final decision denying his claim for supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). Plaintiff contends that he has been disabled since April 1, 2010 because of numerous impairments, including diabetes, obesity, degenerative disc disease, sleep apnea and right shoulder impingement. The administrative law judge concluded that even though plaintiff has several severe and non-severe impairments, he was not disabled because he could perform sedentary work with some additional limitations, and such work exists in significant numbers in the national economy. As explained below, I am remanding this case because the administrative law judge did not explain adequately his reason for concluding that plaintiff's right hand impairment would not be a significant limitation on his ability to work.

      The following facts are drawn from the administrative record (AR).

FACTS

A. Social Security Application

Plaintiff William E. Moore filed for supplemental security income on April 29, 2013, alleging that he was disabled because of diabetes, hepatitis, obesity, degenerative disc disease, restless leg syndrome, neck pain, peripheral neuropathy, hypertension, hypertrigglyceridemia and severe right buttock pain. AR 15. He was 45 years old at the time of his application. AR 139. His application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge. A video hearing was held before Administrative Law Judge A. Benton, on June 2, 2015, AR 32-55, at which plaintiff was represented by counsel. On September 21, 2015, the administrative law judge concluded that plaintiff was not disabled. AR 15-27. In December 2016, the Appeals Council denied plaintiff's request for review, AR 1, making the hearing decision the final decision of the Commissioner.

B. Overview of Medical Issues and Treatment

1. Diabetes

Plaintiff's medical record contains treatment notes for diabetes, starting in March 2010. AR 247-49. Between March 2010 and February 2015, his diabetes was sometimes well-controlled and sometimes not, and sometimes caused painful neuropathy. AR 361, 666-68, 799-80, 863-66, 1060-65.

2. Left arm and hand weakness

In May, June and August 2010, plaintiff was seen for weakness and tingling in his left arm and hand. He reported difficulty holding objects with his left hand. AR 272, 391. He was given a diagnosis of ulnar nerve neuropathy of his upper left extremity and probable cubital tunnel syndrome. AR 272, 391-93. In June 2010, he was prescribed anti-inflammatory medicine and an elbow pad to treat his left extremity. AR. 407.

3. <u>Neck and back pain</u>

In July and August 2010, plaintiff was seen for neck and back problems. He received an xray and magnetic imaging study showing some minor issues in his cervical spine, AR 274-76, and was directed to participate in physical therapy and a home exercise program. AR 277-79. In November and December 2010, plaintiff continued to complain of back pain, but a spine magnetic imaging study in November 2010 showed no abnormalities. AR 475. He was fitted for a back brace and referred to physical therapy. AR 470, 474, 380. In May 2013, plaintiff reported back pain again, and received a spine x-ray showing mild progression of degenerative changes in his lower thoracic spine. AR 605. A magnetic imaging study in June 2013 showed other mild degenerative changes. AR 652, 1060-65. Plaintiff continued to seek treatment and physical therapy for back pain throughout the remainder of 2013 and 2014. AR 717-19. In January 2014, his physical therapists reported that aquatic therapy was helping. AR 752-53. Plaintiff was discharged from physical therapy in February 2014, after reaching his therapy goals. AR 818-19. The notes state that plaintiff was feeling "much better," had "decreased back and lower extremity pain," would

continue with a home exercise program and walk outside when the weather was favorable. AR 965.

4. <u>Right shoulder, arm and hand weakness</u>

Plaintiff began complaining about right shoulder pain in May 2013. An xray showed no bone or joint abnormality, AR 600, but a magnetic imaging study in June 2013 showed a rotator cuff tear. Plaintiff's primary physician referred him to an orthopedics specialist. AR 628. The orthopedics specialist conducted an exam in October 2013 that showed weakness throughout plaintiff's shoulder and numbness and tingling in his fingers. AR 627-30. The specialist gave plaintiff a diagnosis of partial rotator cuff tear and biceps tendinitis with intra-articular tear. AR 627-30. The specialist noted that he would normally offer injections but could not because plaintiff's diabetes was not well-controlled. <u>Id.</u> Plaintiff continued to complain about pain in his right shoulder and arm and an inability to use his right hand throughout the remainder of 2013. AR 711-13, 1060-65. Plaintiff was prescribed occupational and physical therapy for his shoulder. AR 691, 711-13. Notes from January 2014 state that plaintiff was "making progress" in occupational therapy. AR 762. In February 2014, plaintiff completed occupational therapy for his shoulder. The physical therapist noted "significant progress" and observed that plaintiff "moves his arm typically without pain behaviors and can use it for functional tasks within the clinic." AR 968-69. Plaintiff reported that he had been able to shovel snow. AR 968.

In March 2014, plaintiff reported to the orthopedics specialist that his shoulder was "ok" and that he was exercising at home. AR 961-63. The specialist noted tenderness over the biceps tendon of the right shoulder and decreased strength, and assessed plaintiff as still having bicipital tendinitis and a torn rotator cuff. He directed plaintiff to continue strengthening at home. Id.

Plaintiff continued to report right shoulder pain and right hand weakness and numbness in April and June 2014. AR 876-80. In June 2014, plaintiff reported that his shoulder hurt after he lifted a battery weighing about 60 pounds. AR 872-73. He felt better and was able to move his shoulder after receiving an injection. Id.

5. Other conditions

Plaintiff received medical care or evaluation during the relevant time period for a number of other conditions, including mild ankle degeneration in February 2011, AR 598; pain in his right buttock and thigh in February 2011, AR 364-67; an umbilical hernia in December 2011, AR 1088; knee pain in May 2013 and April 2014, AR 601-03; and sleep apnea in October and December 2013, AR 711-13, 1060-54. A number of his treating physicians noted that plaintiff is morbidly obese. AR 876-80.

C. State Agency Doctors' Opinions

The record contains opinions from two state agency physicians, Dr. Muran Bijpuria and Dr. Mina Khorshidi. Both opinions refer to a consultative examination that was

5

performed by Dr. Neil Johnson in September 21, 2013, but does not appear to be in the record. According to the "Findings of Fact and Analysis of Evidence" contained in Bijpuria's evaluation, Johnson performed a Tinel's test that was positive at plaintiff's right elbow. AR 62-63. (A Tinel's test is used to detect irritated nerves.) Plaintiff complained of pain in doing right hand grip and pinch testing and Johnson could not read plaintiff's signature of his right hand. Id. Bijpuria notes that during the physical assessment, plaintiff showed "almost no functional use of his right hand," "could not button or pick up a coin with the right hand," "has no strength in his right hand," and was "unable to hold anything without dropping" it. Id. at 63.

Both Bijpuria and Khorshidi found that plaintiff could perform sedentary work with some additional limitations. AR. 62-68, 77-82. With respect to the limitations on use of plaintiff's right extremity, both found that plaintiff was limited in reaching overhead and in gross manipulation. AR 66, 80. Bijpuria found that plaintiff was unlimited in fingering and feeling, AR 66, while Khorshidi found plaintiff was limited to frequent handling and fingering. AR 80.

### D. Administrative Hearing

At a hearing conducted via video conference, plaintiff testified that he had performed manual labor at his family's farm until 2012, including lifting up to 100 pounds, using power tools and splitting wood. AR 37-39. He stopped because he lost feeling in his right hand. AR 41. Shortly thereafter, he had too many problems with his diabetes, back, shoulder and

6

hand to continue working. AR 41. He testified that neuropathy had caused his legs to swell so much that he could not sit or stand for more than half an hour at a time before needing to change positions, AR 43-44, and that the most comfortable position for him was on his side. AR 44. In the past, he had enjoyed fishing, but had to stop because he could not reel in the line because of problems with his right shoulder and hand. AR 45. He testified that it took him half hour to get out of bed in the morning, AR 47, and that he could not do yard work, AR 45, cook, AR 48, clean, AR 48, tie shoes, AR 47, stand long enough to take a shower, AR 47, or even carry a basket or a cup of coffee without dropping it. AR 45. Plaintiff testified that he could sometimes pick up objects, but he would drop them after losing sensation in his hand. AR 48. The extent of his activity each day is to go downstairs from his bedroom, with his wife's assistance, and then return to his bed in the evening. AR 43.

In addition to plaintiff, a vocational expert testified, responding to two hypotheticals from the administrative law judge. In the first hypothetical, the administrative law judge asked the vocational expert to consider a person who is capable of performing at the sedentary job level, with the additional limitations of occasional reaching overhead with their dominant extremity, frequent reaching in all other directions, frequent fingering and handling, occasional power gripping and using power tools, occasional climbing of stairs and ramps, occasional exposure to dust, odors, fumes and other pulmonary irritants, but no climbing of ladders or scaffolds or exposure to hazards. AR 52. The vocational expert testified that an individual with those limitations would not be able to perform plaintiff's

7

past relevant work as a farm laborer, but would be able to perform some work in the regional or national economies, including some inspector, machine vendor and cashier jobs. Id. Under a second hypothetical, the administrative law judge asked whether the same individual would be able to perform those jobs if he needed to change positions frequently, meaning that the person would need the opportunity to lie down for a few minutes after sitting for 15 minutes. AR 53. The vocational expert testified that no jobs existed in the national economy with that limitation included. Id.

### E. Administrative Law Judge's Decision

The administrative law judge found that plaintiff suffered from several severe impairments: diabetes with neuropathy, obesity, degenerative disc disease, obstructive sleep apnea and right shoulder impingement. AR 17-18. The administrative law judge also found that plaintiff's hypertension, hepatitis, restless leg syndrome, bronchitis, left ankle sprain and hyperlipidemia were not severe impairments. Id. The administrative law judge found that none of the impairments, alone or in combination, met or medically equaled the severity of a listed impairment. Id.

In crafting the residual functional capacity, the administrative law judge limited plaintiff to sedentary work, and further limited him to occasional overhead reaching and frequent reaching in other directions with his right hand, frequent handling and fingering with the dominant upper extremity, occasional power gripping, occasional exposure to dust, odors, fumes and other pulmonary irritants and occasional stair and ramp climbing, but no

ladders, ropes, scaffolds or exposure to hazards. AR 18. The administrative law judge went on to explain that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for reasons explained in this decision." AR 19. The administrative law judge discussed the medical evidence and plaintiff's reported activities. AR 19-25. He acknowledged that plaintiff had testified that he was unable to drive long distances, tie shoelaces, prepare meals or perform housework because of inability to use his right hand or arm. AR 19. The administrative law judge gave "significant weight" to the opinions of the state agency medical consultants, Bijpuria and Khorshidi, stating that their opinions were "based on a detailed review of the evidence and are consistent with both the objective medical evidence and the treatment history." AR 25. Finally, the administrative law judge concluded from the vocational expert's testimony that plaintiff was not disabled because work exists in significant numbers in the national economy that plaintiff could perform.

OPINION

Plaintiff argues that the administrative law judge (1) erred by finding that his obesity, knee and hand impairments are not severe and failing to consider the effect of plaintiff's obesity, knee and hand impairments on his ability to work; and (2) made numerous errors in determining plaintiff's residual functional capacity. Most of plaintiff's arguments are not well-supported or developed. Although plaintiff filed a 42-page brief, the majority of his

9

brief is excerpts from medical records, hearing testimony and social security regulations. Plaintiff provides little explanation why the records, testimony and regulations he included provide support for remand in this case. Thus, most of plaintiff's arguments are addressed only briefly below. However, plaintiff's argument regarding his hand impairment has some merit. As discussed below, remand is required on this issue because the administrative law judge failed to explain why he rejected plaintiff's testimony regarding the hand impairment and why he declined to place further limitations on plaintiff's hand use.

### A. Obesity

Plaintiff reported that he was 70 inches tall and 342 pounds, meaning that he had a body mass index of 49.1. AR 17. The administrative law judge found that plaintiff's obesity was a severe impairment. Id. Plaintiff argues that the administrative law judge erred in failing to consider the impact of plaintiff's obesity on his ability to work, and in particular, whether his obesity affected his ability to sit, stand, walk, lift, carry, push, pull, climb, balance, stoop, crouch and tolerate heat, humidity and hazards.

Plaintiff's argument is not persuasive. The administrative law judge noted that he considered plaintiff's obesity in limiting plaintiff to sedentary work and in further limiting his ability to climb ramps, stairs, ladders, ropes and scaffolds. AR 18, 26. The administrative law judge also relied on medical records and the opinions of the state agency medical consultants that discussed plaintiff's weight. AR 63, 77. The medical records show that plaintiff's obesity dated back to at least 2010, when he was purportedly still performing

manual labor on his family farm. AR 261. Plaintiff does not point to any specific evidence in the medical record or the hearing testimony suggesting that his obesity limited his ability to work beyond what the administrative law judge found. Thus, plaintiff has failed to show an error in the administrative law judge's consideration of his obesity. Prochaska v. Barnhart, 454 F.3d 731, 737 (7th Cir. 2006) (rejecting argument about obesity because claimant failed to "specify how [her] obesity further impaired [her] ability to work, and because the record relied upon by the ALJ sufficiently analyzes her obesity."); Richards v. Astrue, 370 Fed. Appx. 727, 733 (7th Cir. 2010) (finding argument regarding obesity not convincing where claimant had recited "some of the possible ways obesity may affect other impairments," but did "not contend that any of those examples appl[ied] to her or identif[ied] any actual effect of her obesity").

B. Knee Impairment

Next, plaintiff argues that the administrative law judge erred in failing to find that plaintiff's knee pain is a severe impairment that limited his ability to work. As with his argument about obesity, plaintiff points to no evidence in the medical record or the hearing testimony to explain why he believes his knee pain is a severe impairment or limits his ability to work. In fact, the only document in the record cited by plaintiff regarding his knee pain is his application for benefits in which he wrote that he suffered from knee pain. AR 193. He does not cite to any document in the medical record regarding treatment or assessment of "knee pain." A mere reference to "knee pain" is not enough to raise a claim of error on

11

appeal. Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001) (generalized assertion of error not enough to challenge adverse ruling). Moreover, although the administrative law judge did not mention "knee pain" in particular, he did mention plaintiff's allegations of diabetes with neuropathy, obesity, restless leg syndrome and left ankle sprain. AR 17-18. The administrative law judge addressed each of these impairments and incorporated them into his residual functional capacity assessment. Because plaintiff has not explained why the administrative law judge should have further limited his ability to work based on his knee pain, this claim fails.

## C. Hand Impairments

Plaintiff argues that the administrative law judge should have found that both his left and right hands are severely impaired and substantially limit his residual functional capacity. He argues that medical evidence supports his claim that he cannot grip items with either hand.

Plaintiff's argument regarding a left hand impairment lacks merit. The only evidence in the medical record relating to a left hand impairment is from May and August 2010. A medical report from May 2010 shows that plaintiff received treatment for neuropathy in his left arm and hand. AR 270-72. The treating physician at that appointment noted that plaintiff's left hand was weak and that he could not make a fist. AR 271. In August 2010, a physical therapist also noted that plaintiff's left hand was significantly weaker than his right. AR 277-78. However, a prior decision from the Commissioner found plaintiff not

12

disabled between March 25, 2010 and September 26, 2012. AR 15. The period adjudicated by the administrative law judge relevant to this case began on April 29, 2013. AR 27. No evidence in the medical record or plaintiff's testimony supports a finding that plaintiff's left hand problems continued into 2013 and beyond. Instead, plaintiff testified that he was able to perform farm labor until 2012 and that problems with his back and right shoulder and hand caused him to stop working. AR 26.

Plaintiff's argument regarding his right hand limitations is more persuasive. A review of the medical records shows that plaintiff's right hand and arm problems stem from a rotator cuff tear, tendinitis and nerve problems. AR 627-30, 876-880. The administrative law judge concluded that plaintiff's diabetes with neuropathy and right shoulder impingement were severe impairments, but in crafting plaintiff's residual functional capacity, he determined that plaintiff is "capable of frequent handling and fingering with the dominant upper extremity and may occasionally perform tasks that require power gripping, such as operating power tools." AR 17, 18. The administrative law judge discounted some of plaintiff's statements about his inability to use his right extremity based on evidence that plaintiff had helped a relative move in September 2010, worked on a farm until 2012, shoveled snow in February 2014 and lifted a sixty-pound battery in June 2014. AR 20. The administrative law judge also pointed to the progress that plaintiff had made with his right shoulder during occupational therapy and, in particular, the statements in his occupational therapy discharge reports that he had made significant progress in using his right arm. AR 24.

13

Although the administrative law judge's analysis is thorough and well-reasoned, his analysis of plaintiff's right hand impairment is inadequate. First, it appears that the administrative law judge conflates plaintiff's right shoulder and arm problems with his right hand problem, even though it is not clear from either the medical evidence or plaintiff's testimony that this is the correct analysis. In particular, the record shows that plaintiff received occupational therapy treatment for his shoulder and that he made significant progress in that regard, such that he recovered some of his strength and was able to shovel snow and lift a battery (with pain and resulting injury) in 2014. AR 968. However, throughout 2013 and 2014, plaintiff also complained about weakness, tingling and numbness in his right hand. It is not clear from the records whether these symptoms were attributable to his rotator cuff tear, biceps tendinitis, diabetic neuropathy or something else. From my review, the occupational therapy notes related to plaintiff's shoulder contain no obvious discussion about goals, exercises or other therapy related to plaintiff's hand weakness and numbness in particular. The administrative law judge also failed to discuss the consultative examination performed by Dr. Johnson, which raised significant questions about plaintiff's ability to use his right hand. In September 2013, Johnson apparently found that plaintiff had "almost no functional use of his right hand," "could not button or pick up a coin with the right hand," "has no strength in his right hand," and was "unable to hold anything without dropping" it. AR 64. (To the extent Johnson's statements were based on plaintiff's own reports of his abilities, rather than on a physical examination, that is not clear from the records or any discussion of Johnson's report.) Although the state agency

physicians and administrative law judge found plaintiff to be limited to "frequent" handling and fingering, as opposed to constant, they did not provide an adequate explanation for not limiting him further based on Johnson's findings. Only Dr. Khorshidi addresses this issue specifically, noting that despite plaintiff's statement that he has "no strength" in his right hand, "evaluations prove [plaintiff] has only decreased strength." AR 79. But Khorshidi's statement does not address Johnson's findings regarding plaintiff's inability to perform fine manipulation or sustain feeling in his hand long enough to hold something without dropping it, which seems to be a different issue from that of strength generally.

Similarly, plaintiff's own testimony regarding his right hand problems suggests that his hand weakness and numbness should be considered separately from his shoulder pain. Plaintiff testified that he was unable to tie shoes, grip or hold anything with his right hand not because his shoulder lacked strength, but because he has no "grip feeling" in his hand and could not maintain any pressure with it. AR 36. The administrative law judge did not explain why he discounted this testimony, beyond pointing to the evidence of plaintiff's occupational therapy and evidence that plaintiff had lifted a battery and shoveled snow on one occasion. AR 20. Again, however, it is not obvious that those isolated activities undermine plaintiff's testimony regarding his frequent inability to perform fine motor functions or lift even small items with his right hand.

In sum, because the administrative law judge did not explain adequately why he discounted a consultative examination and why he found that plaintiff's activities and the medical record undermined plaintiff's credibility regarding his hand limitations, remand is

15

required.  Ghiselli v. Colvin, 837 F.3d 771, 777–78 (7th Cir. 2016) (remand required when administrative law judge did not "identify a basis for his conclusion that the life activities [the plaintiff] reported were inconsistent with the physical impairments she claimed"); Thomas v. Colvin, 745 F.3d 802, 806 (7th Cir. 2014) ("An ALJ need not mention every piece of medical evidence in her opinion, but cannot ignore a line of evidence contrary to her conclusion."); Shideler v. Astrue, 688 F.3d 306, 310-11 (7th Cir. 2012) (administrative law judge must explain his reasoning and build "logical bridge" from evidence to his conclusion). Because the administrative law judge discounted plaintiff's testimony regarding his ability to use his right hand, the administrative law judge concluded that plaintiff had the residual functional capacity to perform work that required frequent handling and fingering with his right hand and occasionally gripping enough to use power tools.  AR 18.  However, neither the administrative law judge nor the Commissioner has shown that the record includes substantial evidence to support such a finding.   Therefore, remand is required.

D.  Remaining Arguments Regarding the Residual Functional Capacity Assessment

Plaintiff makes several additional arguments regarding the administrative law judge's residual functional capacity assessment.  In particular, plaintiff argues that the administrative law judge erred by (1) failing to cite any medical evidence in support of his residual functional capacity assessment; (2) failing to consider plaintiff's testimony that he cannot do yard work, fish, cook, clean, do laundry or stand long enough to take a shower; (3) failing to include a function-by-function assessment; (4) failing to consider whether plaintiff could

16

do sustained work activities; (5) concluding that plaintiff can perform the sitting, standing and reaching required for sedentary work; and (6) failing to consider plaintiff's need for frequent breaks.

With respect to plaintiff's first, second and third arguments, the administrative law judge cited medical evidence in support of his residual functional capacity assessment, cited and discussed plaintiff's testimony about his daily activities and included a functional assessment, as opposed to considering only whether plaintiff could perform sedentary work. Thus, plaintiff's generalized claims of error are unpersuasive.

Plaintiff's remaining arguments are all related to the issue whether plaintiff could actually work on a full-time basis in light of his numerous impairments and need to change positions frequently. Plaintiff points to his testimony at the hearing that if he sits for a half hour, he must get up and walk around and then sit again when his back or legs start to hurt. AR 43. He also testified that his most comfortable position is lying on his side, AR 44, and that his daily activities are extremely limited. AR 45. The administrative law judge explained that he thought that the minor impairments shown in plaintiff's magnetic imaging study and xray results, as well as plaintiff's physical therapy records and plaintiff's activities, suggested plaintiff was more capable than he had testified. However, the administrative law judge did not point to any specific evidence in the record that clearly supports a finding that plaintiff could perform full-time work or do so without needing to change positions. The physical therapy reports suggest that plaintiff is capable of performing an hour or so of activity in a swimming pool, AR 818-19, but do not obviously support a conclusion that

17

plaintiff could work an eight-hour day, five days a week. Similarly, the fact that plaintiff shoveled snow once and lifted a heavy battery once seem to have little bearing on whether he could work full-time. E.g., Allensworth v. Colvin, 814 F.3d 831, 835 (7th Cir. 2016) ("[S]weep[ing] the floor and do[ing] the dishes [is] faint evidence of [plaintiff's] capacity for full-time, gainful, out-of-home employment."). Regardless whether these would be independent reasons to remand this case, I agree with plaintiff that the administrative law judge should explain more clearly why he believes plaintiff is capable of working a full time job in light of his back pain and neuropathy and why he rejected plaintiff's testimony about needing to change positions frequently. On remand, the administrative law judge should provide a more thorough explanation of his conclusions regarding plaintiff's ability to perform full-time work.

ORDER

IT IS ORDERED that the decision denying benefits to plaintiff William E. Moore is REVERSED and this case is REMANDED to defendant Acting Commissioner of Social Security for further proceedings consistent with this opinion.

Entered this 30th day of October, 2017.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge